STATE of Tennessee, Petitioner,

v.

Walter Thomas KELLY, Respondent.

Supreme Court of Tennessee.

Aug. 25, 1980.

Robert L. Jolley, Jr., Asst. Atty. Gen., William M. Leech, Jr., Atty. Gen., Nashville, for petitioner.

Carl R. Ogle, Jr., Jefferson City, for respondent.

OPINION

BROCK, Chief Justice:

The defendant Kelly was convicted of second degree burglary and sentenced to a term in the penitentiary of not less than 3 years nor more than 7 years. The Court of Criminal Appeals reversed the conviction and remanded the case for a new trial, finding (1) that the trial judge erred in admitting over the defendant's objection an alleged confession and (2) that the trial court erred in failing to instruct the jury that in fixing punishment it was at liberty

to fix the maximum sentence at the same period of years as the minimum sentence allowed by law. We granted certiorari review to consider the issues raised respecting the alleged confession.

On September 21, 1976, a stereo and one speaker were stolen from a residence in Hamblen County. Three or four days later, after a conversation with co–defendant Brooks, investigators were led to a house where the stereo was recovered. On September 26, 1976, the 18–year–old defendant Kelly was arrested and placed in jail after his *Miranda* rights had been made known to him and he had signed a printed waiver form stating, *inter alia*, that he was willing to make a statement and answer questions without the presence of an attorney. Sometime thereafter he did make a statement to Officer Trippy in which he confessed commission of the crime with which he is charged in this case and Officer Trippy wrote this confession in his own handwriting on the back side of the *Miranda* rights waiver form.

On the day of trial the defendant made an oral motion to suppress the alleged confession, alleging that it was involuntarily given because induced by promises of assistance made by Officer Trippy. The court proceeded to conduct a hearing out of the presence of the jury respecting the admissibility of the alleged confession and after consideration of the conflicting and confusing testimony introduced upon this issue concluded that the alleged confession was voluntary and, therefore, overruled the motion to suppress and admitted the confession into evidence. The Court of Criminal Appeals reached a contrary conclusion, finding that "this defendant's confession was induced by the hope of reward wrongfully held out to him by an over zealous criminal investigator that if convicted he could be released on probation and not have to serve any prison sentence."

As above indicated, the evidence upon which the trial court acted and upon which this issue must be determined was conflicting and quite confusing but we may safely assume that the evidence most favorable to

the state and which was accredited by the trial judge is represented by the following statement of Officer Trippy:

"The only thing I advised Mr. Kelly was if he was guilty and convicted over here that upon his statement, cooperation in the case, that if he was guilty and he admitted it, it would be easier for him and that we would not resist his probation hearing at the time of conviction, that it would be easier for him to go over here if he had done it, or had taken part in it, if we had the confession and he owned up to his part, it would be easier in the eyes of the court to determine probation. But that I myself couldn't do it; I would ask the District Attorney not to resist his probation here."

It was following the advice thus given the defendant by Officer Trippy that the defendant made his "confession."

Perhaps the leading case in this country dealing with the standard to be applied in determining whether an alleged confession of a criminal defendant is sufficiently voluntary to be admitted into evidence is *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). In that case the Supreme Court interpreted the Fifth Amendment to mean that in order for a confession to be admissible it must be "free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." 168 U.S. at 542–43, 18 S.Ct. at 187. Down through the years the *Bram* standard has been cited with approval and followed by the Supreme Court in *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Hutto v. Ross*, 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976).

But, not all promises by state officers of leniency render involuntary confessions thereby induced. Relevant here is the decision of the Supreme Court in *Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). In that case a prisoner sought relief from his conviction in the Con-

necticut state courts, alleging that the Connecticut courts had applied an unconstitutional standard in determining that his alleged confession was "voluntary." The alleged defect in the standard applied was that in order for a confession to be considered involuntary because induced by promises of leniency it was necessary not only to show that the promise induced the confession but that the promise had probably induced the defendant to confess *falsely*. In setting aside the Connecticut conviction because of the admission of a confession the voluntariness of which was determined by the faulted standard, the Supreme Court said:

> "Our decisions under that [Fourteenth] Amendment have made clear that convictions following the admission into evidence of confessions which are involuntary, i. e., the product of coercion, either physical or psychological, cannot stand. *This is so not because such confessions are unlikely to be true but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial system—a system in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth.* (Citations omitted.) To be sure, confessions cruelly extorted may be and have been, to an unascertained extent, found to be untrustworthy. But the constitutional principle of excluding confessions that are not voluntary does not rest on this consideration. Indeed, in many of the cases in which the command of the Due Process Clause has compelled us to reverse state convictions involving the use of confessions obtained by impermissible methods, independent corroborating evidence left little doubt of the truth of what the defendant had confessed. Despite such verification, confessions were found to be the product of constitutionally impermissible methods in their inducement. Since a defendant had been subjected to pressures to which, under our accusatorial system, an accused should not be subjected, we were constrained to find that the procedures leading to his conviction had failed to afford him that due process of law which the Fourteenth Amendment guarantees.

> \* \* \* \* \* \*

> "From a fair reading of these expressions (excerpts from the opinions of the Connecticut courts), we cannot but conclude that the question whether Rogers' confessions were admissible into evidence was answered by reference to a legal standard which took into account the circumstance of probable truth or falsity. And this is not a permissible standard under the Due Process Clause of the Fourteenth Amendment. The attention of the trial judge should have been focused, for purposes of the Federal Constitution, on the question *whether the behavior of the State's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self–determined—a question to be answered with complete disregard of whether or not petitioner in fact spoke the truth.*" (Emphasis added.) 81 S.Ct. at 739–41.

*Rogers* clearly sets out the due process standard for determining the admissibility of an alleged confession, viz., "whether the behavior of the state's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self–determined—a question to be answered with complete disregard of whether or not the petitioner in fact spoke the truth." Of course, the states are free, if they so choose, to adopt and apply a standard of voluntariness and admissibility that is more favorable to the defendant than the federal constitutional standard. However, we consider the *Rogers* standard to be the appropriate one to be applied in this state.

In the case at bar, the trial judge expressly found, considering the totality of the circumstances relating to the defendant's confession and considering the "demeanor and credibility of the witnesses in this case," that the confession was voluntar-

ily given. In fact, he stated that he was "comfortably convinced in [his] own mind" of the voluntariness of the defendant's confession. This being the case, the Court of Criminal Appeals and this Court are bound to accept that determination unless the evidence in the record preponderates against that finding. *State v. Chandler,* Tenn., 547 S.W.2d 918, 922–23 (1977); *Monts v. State,* 214 Tenn. 171, 379 S.W.2d 34 (1964); *Monts v. State,* 218 Tenn. 31, 400 S.W.2d 722 (1966); *Wooten v. State,* 203 Tenn. 473, 314 S.W.2d 1 (1958). Of course, legal conclusions drawn from undisputed facts are reviewable.

■ Applying the standard set out in *Bram* and *Rogers, supra,* a careful review of the record in this case fails to convince us that the evidence preponderates against the finding of the trial judge that the defendant's confession was voluntary. There is no preponderance of evidence that "the defendant's will was overborne at the time he confessed." *See, Reck v. Pate,* 367 U.S. 433, 440, 81 S.Ct. 1541, 1546, 6 L.Ed.2d 948 (1961); *Rogers v. Richmond, supra.* We agree with the contention of the State that Officer Trippy's advice and promise to ask the District Attorney General not to oppose probation, making it clear to the defendant "that I myself couldn't do it . . ." was, under all the circumstances here attendant, too indefinite and insubstantial to overbear the defendant's will to resist and bring about a confession not freely self-determined. At least, the evidence does not preponderate against that conclusion. The defendant was 18 years of age and had an eighth grade education; he had received the benefit of the *Miranda* warnings, had been in custody only an hour, or so, at most, and had not been extensively interrogated or mistreated in any way. Moreover, he had been in custody once prior to this occasion when he was a juvenile. There is no indication that he was other than calm and in full control of his emotions and reasoning powers. *See, Hunter v. Swenson,* 372 F.Supp. 287 (D.C.Mo.1974).

The court in the *Hunter, supra,* case pointed out:

"The Fifth Amendment does not condemn all promise–induced admissions and confessions; it condemns only those which are *compelled* by promises of leniency. This is amply illustrated by the Supreme Court's treatment of promise–induced guilty pleas, i. e. judicial confessions. The mere fact that a guilty plea is induced by a promise of leniency does not render the plea involuntary. *Santobello v. New York,* 404 U.S. 257, 261–262, 92 S.Ct. 495, 498–499, 30 L.Ed.2d 427 (1971); *Brady v. United States,* 397 U.S. 742, 749–755, 90 S.Ct. 1463, 1469–72, 25 L.Ed.2d 747 (1970). The question in 'plea bargaining' situations is not whether the guilty plea would have been made *but for* the promise of leniency, but whether the promise was coercive in nature, *i. e.* whether the accused was so gripped by the hope of leniency that he did not or could not freely and rationally choose among the available courses of action.

\* \* \* \* \* \*

"If it can be said that an admission or confession was induced in a 'but for' sense by a promise of leniency, but that promise was not a compelling influence, then introduction of the admission or confession . . . does not contravene the command of the Fifth Amendment." 372 F.Supp. at 300–301.

*See also, Hutto v. Ross, supra; United States v. Bailey,* 468 F.2d 652, 673 (5th Cir. 1972); *United States v. Frazier,* 434 F.2d 994 (5th Cir. 1970). Cf. *Ford v. State,* 184 Tenn. 443, 201 S.W.2d 539 (1947) in which it was held that the statement by a police officer to the defendant in custody that the prosecution would not ask for "the electric chair" if he confessed was coercive in nature and rendered the confession thereby induced inadmissible.

We have examined the authorities cited by the defendant, but find that they did not deal with alleged inducements by promises of leniency but with force and threats of force. Thus, they are not in point here.

■ We conclude that the Court of Criminal Appeals erred in reversing the finding

of the trial court that the confession of the defendant was voluntary and admissible. However, we concur in the action of the Court of Criminal Appeals in reversing the conviction and remanding the case to the trial court for a new trial because of the error of the trial court in failing to adequately instruct the jury that in reaching its verdict it could fix the maximum punishment at the minimum prescribed by the statute. We affirm the decision of the Court of Criminal Appeals in that particular respect.

Accordingly, this cause is remanded to the trial court for a new trial with respect to punishment only. Costs incurred on appeal are adjudged against the State of Tennessee.

FONES, COOPER and HARBISON, JJ., and HUMPHREYS, Special Justice, concur.