# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 6, 2002

## STATE OF TENNESSEE v. SAMMIE NETTERS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 99-05539     Chris Craft, Judge**

---

**No. W2001-02710-CCA-R3-CD  - Filed January 8, 2003**

---

Defendant, Sammie Netters, was convicted by a jury of aggravated robbery, and the trial judge sentenced him to twenty years incarceration as a Range II multiple offender.  In this appeal, Defendant contends that:  (1) the evidence was insufficient to sustain his conviction; (2) the trial court erred by denying Defendant's motion to suppress his confession; and (3) the trial court erred in failing to instruct the jury on the lesser-included offenses of robbery and theft.  After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, and JOHN EVERETT WILLIAMS, JJ., joined.

AC Wharton, Jr., Shelby County Public Defender; Tony N. Brayton, Assistant Public Defender; Michael Johnson, Assistant Public Defender; and Franklin Shelton, Assistant Public Defender, Memphis, Tennessee, for the appellant, Sammie Netters.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; William L. Gibbons, District Attorney General; Jennifer Nichols, Assistant District Attorney General; and Katrina Earley, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

**Background**

Scotty Lake was working alone in a Mapco convenience store in Memphis, Tennessee, when a man entered the premises around 11:00 p.m. on March 2, 1999.  The man got a bottle of wine from the cooler and brought it to the counter.  (The parties and the witnesses in these proceedings refer to the item purchased by the assailant as a "bottle of wine."  A photograph attached as an exhibit appears to identify the substance contained in the bottle as strawberry daiquiri.  Whether or not the

bottle contained wine is not relevant to this review, and we will simply address the item purchased by the assailant immediately prior to the robbery as a "bottle"). He asked Mr. Lake how much it cost, then he put the bottle back in the cooler and returned with a six-pack of beer. Mr. Lake's attention was momentarily diverted, and when he turned back to the customer, the man had a .32 or .38-caliber revolver pointed at Mr. Lake's nose. The assailant told Mr. Lake to open the cash register and warned him not to punch anything. Mr. Lake complied with the requests, and the assailant threw the money from the cash register into one of the store's plastic bags. The man then asked Mr. Lake to remove the register's cash tray. When the safe at the bottom of the cash register was revealed, the man appeared to know which keys to punch to open the safe. The assailant retrieved a few additional dollars.

While the assailant was removing the money from the cash register, Mr. Lake held his hands in the air. A customer entered the store and proceeded to the ATM machine without noticing the robbery taking place at the front of the store. Mr. Lake described the customer as a black male, dark complected, seventeen or eighteen years old, and wearing a Federal Express uniform. When the assailant noticed the customer, he walked backwards toward the ATM machine and pointed the gun at the young man. The assailant took the cash the customer had just retrieved from the ATM as well as the cash in his wallet, then left the store. The ATM customer also fled the premises without speaking to Mr. Lake. Mr. Lake then telephoned his manager and the police.

The tape recorder at the Mapco store was not loaded the night of the robbery, and the ATM did not have a tape recorder. The bank that owned the machine was not able to ascertain if a transaction had or had not been completed on that night. The young man who was the second victim was never located, and no complaint regarding a robbery at the ATM inside the Mapco was ever filed.

Mr. Lake described the robber as medium complected, wearing a white shirt, white gym shorts, and glasses. The day after the robbery, the police showed Mr. Lake a photo spread with six pictures. Mr. Lake identified one of the men in the photos as the robber, stating that "it was as close as he could get" from the choices offered. The man identified by Mr. Lake on the first photo line-up was not Defendant. The police returned the next day with a different set of pictures, and this time Mr. Lake identified Defendant as the robber. Sergeant Clark with the Memphis Police Department testified that the first photo line-up included the picture of another robbery suspect who had recently committed offenses with a weapon similar to the one used in the Mapco robbery. The second photo line-up was prepared, though, when the fingerprints lifted from the bottle and beer cans handled by the robber were returned with a positive match to Defendant's fingerprints.

After Mr. Lake's identification and the fingerprint match, the Memphis police issued a warrant for Defendant's arrest. Two months later, Defendant was located in Dallas, Texas when he was apprehended by members of the Texas Department of Public Safety assigned to the Dallas/Fort Worth International Airport. Sergeant Lonnie Freeman, a police detective assigned to the airport, testified that he spoke with the Memphis Police Department following Defendant's arrest in Texas and obtained a brief outline of the robbery in Memphis. Sergeant Freeman, however, did not learn

any of the specific details as to the victims, the manner in which the robbery was conducted, or the street location of the store in Memphis. In his testimony, Sergeant William Merritt of the Memphis Police Department confirmed that he faxed a copy of Defendant's outstanding warrant to Sergeant Freeman but did not give him any details of the robbery.

Sergeant Freeman testified that following his conversation with Sergeant Merritt, Defendant was brought into an interview room and read his Miranda rights. A written copy of the rights was signed by Defendant, Detective Freeman, and Agent Truehitt from the Federal Bureau of Investigation. After orally confessing to the Tennessee robbery, Defendant agreed to provide a written statement. Defendant was read his Miranda rights again before he began writing. In his written statement, Defendant admitted that he entered the Mapco store on March 2, 1999 and grabbed some beer from the cooler. He stated that a man came in to use the ATM when Defendant was robbing the store, and Defendant robbed the man on his way out. After he left the store, Defendant said he handed the gun to his getaway driver. He also noted in his statement that he was promised that "the State and Fed [sic] will not prosecute, only one or the other."

Sergeant Freeman testified that only he and Agent Truehitt were in the interview room during Defendant's interrogation. Sergeant Freeman testified that neither he nor Agent Truehitt coerced or threatened Defendant, or enticed Defendant into making a statement with any promises. He stated that he was unfamiliar with any of the streets in Memphis or even the Mapco chain and did not dictate any of the statement's details to Defendant. Sergeant Freeman testified that Defendant appeared calm during his interview and never expressed any desire for an attorney or to remain silent.

At trial, Defendant testified that his written statement was not an accurate description of the robbery. Although Defendant admitted that he was in the Mapco store at the time of the robbery, he maintained that he was actually the robber's second victim at the ATM machine, not the robber himself. Defendant testified that on the night of the robbery, he entered the Mapco store to buy some "wine" and beer for his wedding the following day while his friend waited outside. Defendant said that he brought the "wine" and beer up to the counter and then went to the ATM machine to retrieve some cash so he could complete his purchase. While he was at the ATM machine, a man entered the store and robbed him before he could use the ATM. Defendant stated that he gave the assailant what money he had in his wallet. Defendant testified that after the robber left the store, Defendant and Mr. Lake discussed the robbery, and Mr. Lake asked Defendant how much money had been taken from him. Defendant and his friend then drove away.

Defendant testified that his written confession was coerced. He testified that he told the Dallas authorities that he did not commit the robbery in Memphis when he was first arrested, but they would not believe him. The Texas police told Defendant his fingerprints were on the bottle handled by the robber, and that meant Defendant was the robber. Defendant admitted he had handled the bottle but again told them he was the customer, not the robber.

Defendant testified that he initially refused to give a written statement concerning the robbery because he was innocent. Defendant testified that Detective Freeman became angry and cursed him when he would not confess. At that moment, a second officer entered the interview room and laid a revolver down on the table and left the room. Defendant still refused to give a statement. The other police officer returned, cocked the gun, and placed the gun against Defendant's head. He told Defendant he would shoot him if he did not confess. Because he now feared for his life, Defendant agreed to give a written statement, but Detective Freeman told him what details to write. Defendant admitted he added the detail about the second victim because he was that victim. Defendant denied that his Miranda rights were ever read to him. However, Defendant admitted he was very familiar with the process because he had given confessions during custodial interrogations before.

The jury convicted Defendant of aggravated robbery.

## Sufficiency of the Evidence

In his appeal, Defendant admits that his written confession and Mr. Lake's testimony provide some evidence to support his conviction. However, Defendant alleges that the evidence overall is insufficient to find him guilty beyond a reasonable doubt under the standard of review imposed by Tenn. R. App. P. 13(e) and the United States Supreme Court decision in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1970). Specifically, Defendant argues that his confession was fabricated and involuntary, and Mr. Lake's credibility was diminished because he identified another suspect as the perpetrator in the first photo line-up.

When considering the sufficiency of the evidence, the standard of review is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2788-2789. A jury's guilty verdict removes Defendant's presumption of innocence enjoyed at trial, imposing instead a presumption of guilt, and Defendant has the burden of overcoming this presumption on appeal. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982); *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). A guilty verdict will be set aside only if the evidence is insufficient to support the trier of fact's findings beyond a reasonable doubt. Tenn. R. App. P. 13(e).

Defendant essentially asks this Court to re-evaluate and re-assess the weight and credibility of the testimony presented at trial. However, it is well established that questions concerning the credibility of witnesses, the weight afforded the evidence, and the resolution of factual issues are left to the trier of fact. *State v. Keough*, 18 S.W.2d 175, 180-81 (Tenn. 2000), *cert. denied* 531 U.S. 886, 121 S.Ct. 205, 148 L.Ed.2d 144 (2000). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984).

At the conclusion of the trial, the jury obviously discredited Defendant's testimony. The victim's testimony that Defendant was the one who robbed him, the presence of Defendant's fingerprints at the crime scene, and Defendant's written confession provided sufficient evidence for the jury to conclude beyond a reasonable doubt that Defendant committed aggravated robbery. Defendant is not entitled to relief on this issue.

**Suppression of Defendant's Confession**

Defendant next contends that the trial court erred in denying Defendant's motion to suppress his confession. Defendant alleges that the combination of the police officers' threats and their promises of leniency overcame his will to resist, thereby violating his due process rights.

A trial court's determination at a suppression hearing is presumptively correct on appeal. *State v. Stephenson,* 878 S.W.2d 530, 544 (Tenn. 1994). Accordingly, the trial court's findings are binding upon this Court unless the evidence contained in the record preponderates against them. *State v. Odom,* 928 S.W.2d 18, 22 (Tenn. 1996). When reviewing whether a statement is made voluntarily, this Court must look to the totality of the circumstances surrounding the confession. The standard is whether the law enforcement official's conduct so diminished Defendant's will to resist such that his confession was not freely, voluntarily, and knowingly given. *State v. Kelly*, 603 S.W.2d 726, 728 (Tenn. 1980); *State v. Bush*, 942 S.W.2d 489, 500 (Tenn. 1997), *cert. denied* 552 U.S. 953, 118 S.Ct. 376, 139 L.Ed.2d 293 (1997).

Only Defendant and Sergeant Freeman testified at the suppression hearing, and there is no doubt that the record presents conflicting testimony. Defendant maintains that he was bullied, cursed, threatened with a gun, and otherwise coerced into giving a statement comprised primarily of details dictated by Sergeant Freeman. Defendant testified at the suppression hearing that he was still slightly inebriated at the interview and was suffering the aftereffects of a hangover. Moreover, Defendant contends that Sergeant Freeman and Agent Truehitt promised him that he would not be prosecuted by the State of Texas or in federal court on the charge of car jacking if he confessed to the Memphis robbery. Defendant, however, did admit that he was familiar with the process involved in custodial interrogations, including his Miranda rights, because he had given confessions in other proceedings.

Sergeant Freeman, on the other hand, testified at the suppression hearing that Defendant was read his rights two times, once before the interview began, and again when Defendant said he wanted to make a written statement. At no time, Sergeant Freeman testified, did Defendant ask to see a lawyer or indicate a desire to remain silent. Sergeant Freeman stated that he knew only an outline of the events leading up to the robbery in Memphis and was not aware of the details later reflected in Defendant's written statement. Although he was aware that Defendant had been intoxicated when he was arrested some fourteen or fifteen hours earlier, Sergeant Freeman stated that Defendant did not appear intoxicated at the interview and remained calm. Sergeant Freeman testified that Defendant brought up the subject of whether he was going to be prosecuted in both state and federal courts for his offenses, and he replied that state and federal charges are not filed simultaneously for

the same charge. Sergeant Freeman denied that any promises had been extended to Defendant, but told Defendant "he was free to write it in the statement if he wished." Sergeant Freeman denied that Defendant had been threatened, either verbally or with a firearm.

Matters regarding the credibility of witnesses, the weight and value accorded the evidence, and resolution of conflicts in the evidence are entrusted to the trial court. *Odom*, 928 S.W.2d at 23. On appeal, Defendant has the burden of showing that the evidence preponderates against a finding that a confession was, in fact, knowingly and voluntarily given. *State v. Buck*, 670 S.W.2d 600, 610 (Tenn. 1984). The trial court had the opportunity to observe the witnesses and their demeanor at the hearing. In resolving the conflicting testimony, the trial court explicitly accredited the testimony of Sergeant Freeman and discredited Defendant's testimony, calling Defendant's version "incredible." We are bound by the trial court's findings unless the evidence of record preponderates against them. In this case, the evidence supports the findings. As such, we must conclude that the trial court properly ruled that Defendant's statement was admissible. Defendant is not entitled to relief on this issue.

**Lesser-included Offenses**

Defendant argues that the trial court erred by failing to instruct the jury on robbery and theft as lesser-included offenses of aggravated robbery under the rationale of *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999).

Aggravated robbery is robbery as defined in Tennessee Code Annotated section 39-13-401, and pertinent to this case, is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Robbery, as defined in Tennessee Code Annotated section 39-13-401, is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear."

A "part (a)" lesser-included offense as defined in *Burns* is where all of the statutory elements of the lesser-included offense are included within the statutory elements of the offense charged. Robbery is an intentional or knowing theft from a person by violence or putting the person in fear. Aggravated robbery is robbery accomplished with a deadly weapon. Therefore, both theft and robbery are part (a) lesser-included offenses of aggravated robbery. *See State v. Richmond*, ____ S.W.3d ____, No. E2000-01545-SC-R11-CD (Tenn. filed Nov. 1, 2002), slip op. at 11.

According to the supreme court's opinion in *Richmond*, it will always be error for the trial court to fail to charge a part (a) lesser-included offense. The supreme court, in *Richmond*, quoted from *State v. Allen*, 69 S.W.3d 181 (Tenn. 2002), as follows:

> [e]vidence sufficient to warrant an instruction on the greater offense will also support an instruction on a lesser offense under part (a) of the *Burns* test. In proving the greater offense, the State necessarily has proven the lesser offense because all of the statutory elements of the lesser offense are included in the greater.

*Richmond*, slip op. at 12 (quoting *State v. Allen*, 69 S.W.3d at 188).

-6-

The supreme court emphasized its point by noting in *Richmond* that a jury is free to reject any evidence offered by the State, regardless of how uncontested or uncontroverted a particular element may appear. Further, the supreme court noted that a jury may exercise its power as fact-finder and *ignore* the State's uncontradicted evidence establishing the use of a deadly weapon in an aggravated robbery case. *Richmond*, slip op. at 12.

Therefore, we agree that the trial court erred in this case by failing to instruct the jury on robbery and theft. However, our analysis does not end there. Also, as noted in *Richmond*, it is well settled that the failure to charge lesser-included offenses may be harmless error under certain circumstances. The court, in *Richmond*, held, "a failure to instruct the jury on lesser-included offenses will merit reversal unless the State proves beyond a reasonable doubt that the outcome of the trial was not affected." *Richmond,* slip op. at 12.

In *State v. Allen*, 69 S.W.3d 181 (Tenn. 2002), the supreme court held that when reviewing whether failure to charge a lesser-included offense is harmless error, the reviewing court "should conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict by the jury." *Id.* at 191.

In this case, it was uncontested and uncontradicted that money was taken from the victim during the aggravated robbery. Furthermore, it was uncontested and uncontradicted that the perpetrator was in possession of, and used, a deadly weapon, to wit: a pistol, in the commission of the offense. Defendant's theory of defense was not that a weapon was not used, or that property was not taken from the victim; Defendant asserted that he was the person against whom an offense was committed at the ATM machine inside the Mapco store, and that another person committed the aggravated robbery. Based upon the supreme court's analysis in *Richmond* and *Allen*, regarding whether failure to instruct on *Burns* part (a) lesser-included offenses is harmless error, we conclude that, in this case, the error was harmless beyond a reasonable doubt.

We must note and we must reiterate again, the strong language used by the supreme court in *Richmond*; specifically, that a jury can reject any evidence offered by the State no matter how uncontroverted or uncontested the fact or element may appear. Furthermore, the jury, as the fact-finder, can ignore the State's evidence establishing a particular element in the exercise of its power as fact-finder. Had there been any scintilla of proof that a weapon may have not been used, or that the event was a theft of money without the victim being placed in fear or by violence, the result in this case might well be different. Based upon the supreme court's decision in *Richmond*, trial courts would be well-advised to always charge all *Burns* part (a) lesser-included offenses. Nevertheless, Defendant is not entitled to relief on this issue.

## CONCLUSION

Based upon our review of the record, we find no reversible error, and therefore affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE