IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs, May 9, 2000

**STATE OF TENNESSEE v. DEWAYNE JORDAN**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 97-03036-38    Joseph Dailey, Judge**

---

**No. W1999-01693-CCA-R3-CD - Filed December 6, 2000**

---

The Defendant, Dewayne Jordan, was found guilty by a Shelby County jury of first degree premeditated murder of one victim, first degree felony murder of a second victim and aggravated robbery. The Defendant was sentenced to two consecutive life sentences for the murder convictions and to ten years imprisonment for the aggravated robbery conviction. The ten-year sentence was to be served concurrently with the two life sentences. The Defendant now appeals his convictions, raising the following issues: (1) whether there was sufficient evidence to convict the Defendant of first degree premeditated murder, first degree felony murder and aggravated robbery, (2) whether the trial court properly admitted the Defendant's statement into evidence, and (3) whether the trial court properly ordered that the Defendant's two life sentences be served consecutively. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Tony N. Brayton, Assistant Public Defender and Dianne Thackery, Assistant Public Defender, for the appellant, Dewayne Jordan.

Paul G. Summers, Attorney General and Reporter,  J. Ross Dyer, Assistant Attorney General, William L. Gibbons, District Attorney General, Jerry Harris, Assistant District Attorney General, and Lee V. Coffee, Assistant District Attorney General for the appellee, State of Tennessee.

**OPINION**

In March 1999, a Shelby County jury convicted the Defendant of aggravated robbery of Timothy Woods, first degree (felony) murder[1] of Leandre Maclin, and first degree (premeditated) murder of Christopher Burchette. The Defendant now appeals his convictions, arguing the following: (1) that the trial court erred in admitting the Defendant's statement into evidence; (2) that there was insufficient evidence to convict the Defendant of first degree murder, felony murder and aggravated robbery; and (3) that the trial court erred in ordering that the Defendant's two life sentences be served consecutively. We affirm the judgment of the trial court.

## I. FACTS

On October 28, 1996, the Defendant, Dewayne Jordan, went to Michael Lawrence's house with Anthony Phillips[2] and Eric Chambers. Phillips wanted Lawrence to check the brakes on his car. After Lawrence inspected the car, Phillips asked Lawrence where they could get some marijuana. Lawrence said that they could probably get some on Lamar Circle. Lawrence then agreed to take the three men to get some marijuana. On the way to Lamar Circle, Phillips decided to page Timothy Woods, a cocaine dealer, to get some "sticky stuff," i.e., moist marijuana. At Chambers' direction, Lawrence drove the three men to Leandre Maclin's[3] home and parked on the street. Phillips, Chambers and the Defendant got out of the car and walked towards the house. A few minutes later Timothy Woods pulled into the driveway.

Woods testified that when he pulled into Maclin's driveway, Chambers, Phillips and the Defendant approached the car. Chambers then pulled a gun on Woods. At some point, Maclin came outside, and Woods was able to run to a nearby store and call his cousin. Woods left the keys, including those to his apartment, in the ignition of his car. Woods testified that as he was running, he heard five or six gunshots.

The Defendant took Maclin to the car where Lawrence was waiting. Lawrence noticed that the Defendant had a gun and told the Defendant that he did not want to be a part of a shooting. The Defendant told Lawrence to shut up and drive. The Defendant then asked Maclin where Woods stayed. Maclin replied, "[Y]ou all know I'm straight. I'm going to run you out here and get you straight." Lawrence drove the Defendant and Maclin to Woods' apartment. Chambers and Phillips followed in Woods' car.

In the meantime, Woods went back to Maclin's home and noticed that his car was missing. Woods' cousin, Terry Jones, took Woods to his grandmother's home where he called the police and

---

[1] The murder of Leandre Maclin was committed during the course of a robbery.

[2] Anthony Phillips is the Defendant's brother.

[3] Leandre Maclin is the victim the felony murder.

reported that his car had been stolen. Woods also called his roommate, Christopher Burchette,[4] to tell him what had happened.

When the Defendant arrived at Woods' apartment, he told Maclin to get out of the car. The Defendant then took the keys to Woods' apartment and told Lawrence that he would be back soon. The Defendant, Maclin, Chambers and Phillips all went into Woods' apartment. Approximately fifteen minutes later, the Defendant and Chambers returned to the car and told Lawrence to leave. However, before Lawrence was able to drive very far, the Defendant told Lawrence to stop and wait for Phillips. When Phillips appeared and entered the car, the Defendant, Lawrence, Phillips and Chambers drove away. As he was driving, Lawrence was told by one of the men "you don't know shit about nothing. And if you say something you're going to be in trouble and your family, too."

Later, Woods and his cousin went to Woods' apartment. Woods went inside while his cousin waited in the parking lot. When Woods entered the apartment, he saw Burchette lying face-down on the floor. He noticed that the apartment had been ransacked. Woods then went into the bedroom and saw Maclin face-down in the bedroom. Woods called the police. According to Woods, there was some cocaine missing from a safe in the apartment.

Two weeks after the murders, at approximately 6:30 a.m. on November 11, 1996, the Defendant and Phillips were arrested. At approximately 10:30 a.m., Officer Richard David Roleson, along with Sergeant Biding, of the Memphis Police Department advised the Defendant of his rights and interrogated the Defendant. Sergeants Ballard and Helldorfer took over the interrogation at approximately 4:00 or 4:30 in the afternoon and got a written statement from the Defendant. Before getting the statement from the Defendant, Ballard and Helldorfer again advised the Defendant of his rights. After the written statement was typed, the Defendant was told to read the statement to see if it was correct. The Defendant then initialed each page of the statement and signed it at the end. In the statement, the Defendant admitted to participating in the murders of Burchette and Maclin.

## II. ANALYSIS

### A. SUPPRESSION OF EVIDENCE

The Defendant argues that the trial court erred in denying his motion to suppress the statement that the he gave to police on the day of his arrest. The Defendant argues that his rights under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, § 9 of the Constitution of the State of Tennessee were violated because his statement was coerced and thus not voluntary. We disagree.

When an evidentiary hearing is held on the merits of a motion to suppress, the State must demonstrate by a preponderance of the evidence that the Defendant's statements were voluntary,

---

[4]Christopher Burchette is the victim of first degree premeditated murder.

knowing and intelligent. State v. Andrade Bruce Williams, Jr., No. 01C01-9803-CR-00104, 1999 WL 191782, at *3 (Tenn. Crim. App., Nashville, Apr. 8, 1999) (citing State v. Kelly, 603 S.W.2d 726, 728 (Tenn. 1980)). The trial court, as the trier of fact, is entrusted with determining the credibility of witnesses, as well as the weight and value of the evidence presented. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). In determining the admissibility of a confession, the totality of the circumstances must be examined. State v. Smith, 933 S.W.2d 450, 455 (Tenn. 1996). The confession "'must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence . . .'" Id. (quoting Bram v. United States, 168 U.S. 532, 542-43 (1897)). The standard to be followed is whether "'the behavior of the State's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined . . . .'" Kelly, 603 S.W.2d at 728 (quoting Rogers v. Richmond, 365 U.S. 534, 544 (1961)).

A trial court's determination at a suppression hearing is presumptively correct on appeal. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). The reviewing court is bound by the trial court's findings of fact unless the evidence found in the record preponderates against these findings. Odom, 928 S.W.2d at 23. On review, the prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences therefrom. Id. However, this Court is not bound by the trial court's conclusions of law. State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998).

Viewing the evidence in the light most favorable to the State, the Defendant was fully informed of his rights and gave a knowing, intelligent and voluntary statement to the police on the day of his arrest. The Defendant signed an "Interrogation Advice of Rights," which stated that he had been advised of his Miranda rights by Detective Roleson on the morning of the arrest. The Defendant was again advised of his rights by Sgt. Ballard before he made his final statement. Although the statement mistakenly listed the Defendant's name as Dewayne Phillips, it is clear that the information was provided by the Defendant. After the statement was given, the Defendant initialed each page and signed at the end, indicating that the statement was a true and accurate account of what happened.

The officers that interviewed the Defendant testified that they did not improperly influence the Defendant into making a statement through the use of threats or promises. Although there was testimony from the Defendant and Phillips, the Defendant's brother, that officers brought Phillips into the interrogation room and left him alone with the Defendant for approximately thirty minutes, witnesses for the State maintained that Phillips only stopped briefly in the doorway and told the Defendant to tell the truth. The trial court credited the testimony of the officers over that of the Defendant and his brother. As the evidence in the record does not preponderate against factual findings of the trial court, this Court must defer to the trial court's determination that the Defendant's statement was given knowingly and voluntarily and thus, properly admitted at trial.

# B. SUFFICIENCY OF THE EVIDENCE

The Defendant argues that insufficient evidence was presented at trial to convict him of first degree premeditated murder, felony murder and aggravated robbery. We disagree.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956); State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999). On the contrary, this Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

Sufficient evidence was presented at trial to convict the Defendant of aggravated robbery of Timothy Woods, felony murder of Leandre Maclin, and first degree premeditated murder of Christopher Burchette. Michael Lawrence, who was also charged in this case, testified against the Defendant at trial. Lawrence testified that the Defendant took part in all of the crimes for which he stands convicted. The Defendant argues that there was insufficient corroboration of this testimony to convict him of the crimes charged. A criminal defendant cannot be convicted solely on the uncorroborated testimony of an accomplice. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). Whether the testimony of an accomplice has been sufficiently corroborated is a question for the jury. State v. Heflin, 15 S.W.3d 519, 524 (Tenn. Crim. App. 1999). However, corroborating evidence need not be sufficient in and of itself to support a conviction, but it must fairly connect the Defendant with the commission of the crime. State v. Gaylor, 862 S.W.2d 546, 552 (Tenn. Crim. App. 1992).

Although Michael Lawrence was charged as an accomplice in these crimes, there was ample corroboration of his testimony to support the convictions against the Defendant. The Defendant, in his own statement, admitted to participating in the crimes. Moreover, Timothy Woods testified regarding events that took place just prior to the murders, which included the aggravated robbery of his car. According to Woods, the Defendant, Phillips and Chambers approached him while his car

was parked in Maclin's driveway. Chambers pulled a gun on Woods, and it was only when the men were distracted by the appearance of Maclin that Woods was able to escape. Woods left the keys to his apartment in the ignition of the car when he ran away. Woods testified that when he returned to Maclin's house sometime later, his car was gone. Such testimony substantiated Lawrence's testimony that the men were armed and that they were able to enter Woods' apartment because he left his keys in the car when he escaped.

The Defendant, in his own statement, admitted that he had taken part in the murder of Leandre Maclin. The Defendant stated that Chambers said that Maclin could not be left alive. Given the testimony of Lawrence and Woods regarding the robbery of Woods' car, there was sufficient evidence to convict the Defendant of murdering Maclin during the perpetration of an aggravated robbery.

Regarding the death of Christopher Burchette, sufficient evidence was presented at trial for a rational jury to find beyond a reasonable doubt that the Defendant was guilty of first degree murder. First degree murder is the premeditated and intentional killing of another person. Tenn. Code Ann. § 39-13-202(a)(1). Once a homicide has been established, it is presumed to be second degree murder, and the State has the burden of proving premeditation to raise the offense to first degree murder. State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999) (citing State v. Nesbit, 978 S.W.2d 872, 898 (Tenn. 1998)). Premeditation is defined as "an act done after the exercise of reflection and judgment." Tenn. Code Ann. § 39-13-202(d).

> "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

Id. Premeditation is the process of thinking about a proposed killing before engaging in the homicidal conduct. State v. Brown, 836 S.W.2d 530, 540-41 (Tenn. 1992).

The existence of premeditation is a question of fact for the jury to determine and may be inferred from the circumstances surrounding the offense. State v. Rosa, 996 S.W.2d 833, 837 (Tenn. 1999) (citing Brown, 836 S.W.2d at 539)). The use of a deadly weapon upon an unarmed victim and declarations by the defendant of his intent to kill the victim may support the existence of premeditation. State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997).

Viewing the evidence in the light most favorable to the State, a jury could have reasonably found that the Defendant killed Christopher Burchette after the exercise of reflection and judgment. See Tenn. Code Ann. § 39-13-202(a)(1), (d). In the Defendant's own statement, he admitted to participating in the death of Burchette. The Defendant also acknowledged in his statement that there was a discussion in which it was determined that Burchette and Maclin would have to be murdered. According to the Defendant, Chambers told Phillips and the Defendant, "[W]e can't leave without them dead because they know where I stay, and they might take the police to my house or do something to my family." Burchette, who was tortured and shot in the back of the head, was

unarmed at the time of his death. Given the foregoing facts, we conclude that there was sufficient evidence for a jury to find beyond a reasonable doubt that the Defendant was guilty of premeditated first degree murder.

The Defendant also argues that he cannot be guilty of first degree murder because he was not in the apartment when Burchette was killed. However, a person may be criminally responsible for an offense committed by another person where he or she "[a]cting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Id. § 39-11-402(2). Given the Defendant's own statement, there was sufficient evidence for a rational jury to conclude that the Defendant acted with the intent to promote or assist in the murders of Burchette and Maclin.

## C. SENTENCING

The Defendant argues that the trial court erred in running his sentences consecutively. It is within the sound discretion of the trial court whether or not an offender should be sentenced consecutively or concurrently. State v. James, 688 S.W.2d 463, 465 (Tenn. Crim. App. 1984). A court may order multiple sentences to run consecutively if it finds by a preponderance of the evidence that the Defendant fits into one of the categories established in the statute. Tenn. Code Ann. § 40-35-115(b).

In this case, the trial court found that the Defendant was a dangerous offender. See Tenn. Code Ann. § 40-35-115(b)(4). A dangerous offender is one "whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(4). The trial court may order consecutive sentencing where the defendant is considered a dangerous offender. Id. Here, the trial court found that the Defendant showed little regard for human life in the manner in which the victims were killed. Both victims were unarmed and shot in the back of the head. In addition, Burchette was tortured prior to his death. This indicates the Defendant's lack of regard for human life and lack of hesitation to commit a crime in which the risk to human life was high. Thus, we agree with the trial court that the Defendant was a dangerous offender.

When imposing consecutive sentences for an offender found by the court to be dangerous, the court must also determine that consecutive sentences are reasonably related to the severity of the offenses committed and that consecutive sentences are necessary to protect the public from further criminal conduct by the defendant. State v. Wilkerson, 905 S.W.2d 933, 937-39 (Tenn. 1995); State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999). There was adequate evidence for the trial court to conclude that consecutive sentences were necessary to protect the public from further criminal activity by the Defendant. In finding that consecutive sentences were necessary, the trial court stated that "these were cold-blooded executions" that required thought and planning. The trial court also

noted that the Defendant threatened a witness during the trial. Clearly, the trial court was correct in finding that consecutive sentences were justified in this case.

Accordingly, we AFFIRM the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE