IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 24, 2006 Session

## STATE OF TENNESSEE v. CLARENCE DAVID SCHREANE, ALIAS ISSAC CLARENCE EDMOND, ALIAS ISAAC EDMOUND, ALIAS DAVID L. SCHREANE

**Appeal from the Criminal Court for Hamilton County**
**No. 242616     Rebecca Stern, Judge**

---

**No. E2005-00520-CCA-R3-CD Filed April 5, 2006**

---

A Hamilton County Criminal Court jury convicted the defendant, Clarence David Schreane, of first degree felony murder and especially aggravated robbery, a Class A felony, and the trial court sentenced him to life imprisonment for the murder and sixty years for the robbery, ordering the defendant to serve his sixty-year sentence as a career offender consecutively for an effective sentence of life plus sixty years. The defendant appeals, claiming the trial court erred in failing to suppress his confession. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Owen Stuart Brown, Chattanooga, Tennessee, for the appellant, Clarence David Schreane, alias Issac Clarence Edmond, alias Isaac Edmound, alias David L. Schreane.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; William H. Cox, III, District Attorney General; Boyd M. Patterson, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case relates to the defendant's participation in the killing of Marcus Edwards on September 19, 1991. The Chattanooga Police Department investigated the murder; however, the case went cold and remained unsolved for eight years. In 1999, the defendant was incarcerated on unrelated charges when he contacted Chattanooga Police Department detectives and told them he had information related to the unsolved 1991 murder. The detectives had the defendant brought to their location to speak with him, and after a period of a few hours, the defendant confessed.

At the trial, the evidence showed that the defendant accompanied Charles Turner to the victim's place of business to help Mr. Turner commit a robbery. As the victim was talking to Mr. Turner, the defendant struck the victim with a rock, and Mr. Turner then shot the victim with a .38 caliber handgun. Mr. Turner took the victim's .357 magnum handgun, which was on the victim's body. Mr. Turner also took a cigar box containing cash and gave the defendant one hundred dollars as both men fled the scene in the defendant's 1983 Cadillac Eldorado.

Before the trial, the defendant filed a motion to suppress his confession, arguing that it was taken in violation of his Fifth and Fourteenth Amendment rights. At the motion to suppress hearing, Chattanooga Police Department Detective Mike Mathis testified that he was the lead investigator for the 1991 murder. He said the victim was shot to death and found in his business. Detective Mathis said few solid leads developed until the defendant contacted them.

Detective Mathis said that sometime before September 19, 1999, Chattanooga Police Department Lieutenant Steve Angel had been receiving collect telephone calls from the Hamilton County Jail, which he was unable to answer. He said that the defendant's "significant other" contacted the detectives and told them the defendant wanted to talk to them about an unsolved murder. He said the defendant also called and spoke with Lt. Angel and told him enough specific information about the murder to cause Lt. Angel to have the defendant transported from the Hamilton County Jail to the police service center.

Detective Mathis said he conducted an interview with the defendant, culminating in a tape-recorded statement. He said that although the defendant was in custody on unrelated charges, he was not under arrest or charged with the victim's murder when he confessed. Detective Mathis said he did not promise the defendant anything in return for his confession. Detective Mathis said the defendant waived his constitutional right to remain silent and to an attorney before making the tape-recorded statement.

On cross-examination, Det. Mathis said he talked with the defendant for some period of time before reading him his Miranda rights. He admitted that before he arrived to interview the defendant, Lt. Angel had been talking to the defendant. Detective Mathis said that although he did not promise the defendant anything specific in return for his confession, he did explain to the defendant that he would tell the district attorney general's office that the defendant had come forward on his own and cooperated with the police. Detective Mathis admitted that he may have told the defendant he would try to help transport the defendant from the Hamilton County Jail to Silverdale, a state correctional facility.

On redirect examination, Det. Mathis said the defendant initiated the contact with the police department. Detective Mathis explained that the reason for the delay in reading the defendant his Miranda rights was the defendant initially maintained that he had only heard about the murder, not that he had any involvement in it. He said the defendant ultimately "came clean" and confessed.

The defendant testified that when he first arrived at the police service center, he was placed in an interview room with Det. Carroll and Det. Mathis. He said Lt. Angel entered the room later. The defendant said Det. Mathis told him he believed "the bicycle bandit" was responsible for the victim's murder. The defendant said that he then asked to speak with his attorney but that Det. Mathis told him he did not need an attorney. The defendant said Det. Mathis made promises to him before the taping began. He said Det. Mathis promised him that the defendant would not be charged with the murder, that Det. Mathis would speak with the defendant's parole officer in another case, and that Det. Mathis would speak with the district attorney general's office in order to have them dismiss certain charges against the defendant from another case in return for the defendant's cooperation. He said Det. Mathis also promised to transfer him from the Hamilton County Jail to Silverdale. The defendant said he was transferred to Silverdale two days later. The defendant said he did not sign the waiver form until after the taped statement was made.

After considering the evidence and the arguments of counsel, the trial court denied the defendant's motion to suppress. It stated:

> Even on your motion, I can base all of my findings on what Mathis and the statement says. . . . The initial contact came not from the police to [the defendant] but from someone on [the defendant's] behalf and then later by [the defendant] to the police. [The police] would have been derelict in their duty not to see what [the defendant] had to say about it, something like this. So they bring him out there and talk with him.

> Now, as far as the requirements for Miranda warnings, you have to be in custody and subject to interrogation. He was in custody but certainly not on this and not by these officers on this. So I don't think that it actually applies in this situation.

> The fact that he is in custody on something else doesn't mean for Miranda purposes he wasn't in custody on this.

> He also made the initial contact. Certainly they questioned him after he gave them some information but I find from the transcript itself and the conversation between Mr. Mathis at the very beginning of the tape, he says, "Prior to taking this statement I advised you of your constitutional rights and did you understand these." [The defendant] says, "Yes, he did."

> Mathis says, "Am I correct in saying that as I started to advise you of them, you basically recited them to me, did you not?" [The defendant] said, "Yes."

Mathis says, "And I mean you read - - told me what your rights were without even looking at that form, you knew your rights, is that correct?" [The defendant] says, "Yes."

Mathis says, "And you have signed this rights waiver agreeing to talk to us today." "Yes." "And that's your signature that I'm pointing to on this rights form." [The defendant] says, "Yes."

It's incredible to believe that the rights waiver got signed after the taped statement when they discuss it prior to even questioning on the tape, so that's totally unbelievable.

. . . .

Now, I don't believe that [the defendant] walked in there, signed the waiver, and started this. I think he had probably been there a while. He probably got there before midnight and had been talking to some of them and talking to them about things and as they decided they had information they needed to use, they read him rights waiver and did the tape. There is really nothing wrong with it. He made a knowing and voluntary statement to the police. It was not made during the course of negotiations or settlement of this case. He obviously wanted good treatment and was looking out for himself, no doubt about that, that happens all the time. There was nothing improper about this. The motion to suppress the confession is overruled.

At the trial, the jury convicted the defendant as charged. The defendant filed a motion for new trial, and at the ensuing hearing, the defendant called Clyde Edwards, the victim's father, who testified that either the police or the district attorney's office told him that the state was going to offer the defendant a sentence of life imprisonment. Mr. Edwards said, "I told them I didn't care if [the defendant] didn't get but two years, as long as he didn't get out of the pen." Mr. Edwards maintained that he did not remember who told him about the proposed offer. Thereafter, the trial court denied the defendant's motion for new trial.

On appeal, the defendant contends the trial court erred in denying his motion to suppress. He claims the court should have suppressed his confession because (1) he was not given his Miranda warnings in time, and (2) he confessed "in return for certain concessions and a promise of leniency." The state responds that the defendant's confession was admissible because it was voluntarily given, free from any improper influence.

A trial court's factual findings in a motion to suppress hearing are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996);

-4-

State v. Jones, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990).  Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact."  Odom, 928 S.W.2d at 23.  The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence.  State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001).  The application of the law to the facts as determined by the trial court is a question of law which is reviewed de novo on appeal.  State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

## I.  FAILURE TO GIVE MIRANDA WARNINGS EARLIER

The defendant contends that the state violated his Fifth Amendment rights by failing to obtain a waiver of those rights from him before he made incriminating statements to the police.  He claims that only four minutes existed between his waiver of rights execution and his subsequent confession and argues that this demonstrates that he made incriminating statements earlier while under custodial interrogation without having been given proper Miranda warnings.  The state responds that it was not required to give the defendant Miranda warnings before it did because he voluntarily contacted the police to talk about the victim's murder.

The United States and Tennessee Constitutions protect a suspect from "being compelled to give evidence against himself."  State v. Berry, 141 S.W.3d 549, 576 (Tenn. 2004) (citing U.S. Const. amend. V; Tenn. Const. art. I, § 9).  If a suspect is in custody and under state initiated interrogation, the police must first inform him of his Fifth Amendment rights in order for his confession to be admissible as substantive evidence in the trial of the matter.  See Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).   Once informed of those rights, a suspect may voluntarily waive them and speak with the police or he may invoke his Miranda right against compulsory self-incrimination.  Id. at 444-45, 86 S. Ct. at 1612; State v. Crump, 834 S.W.2d 265, 269 (Tenn. 1992), cert. denied, 113 S. Ct. 298 (1992).  In order to introduce a defendant's confession into evidence at the trial of the matter, the burden rests upon the state to demonstrate a valid waiver by a preponderance of the evidence.  See Colorado v. Connelly, 479 U.S. 157, 168, 107 S. Ct. 515, 522 (1986).

In Miranda, the Court limited its holding to situations involving "custodial interrogation," which it defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S. Ct. at 1612.  Miranda interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  Rhode Island v. Innis, 446 U.S. 291, 301,100 S. Ct. 1682, 1689-90 (1980) (footnote omitted).  However, "questioning initiated by the accused is not interrogation in the Innis sense."  State v. Land, 34 S.W.3d 516, 524 (Tenn. Crim. App. 2000) (citing Edwards v. Arizona, 451 U.S. 477, 484, 101 S. Ct. 1880 (1981)).

The record reflects that the defendant initiated the questioning in this case by voluntarily seeking out the detectives and speaking to them concerning the victim's murder. In this regard, we conclude the record does not reflect that the defendant was under custodial interrogation before the police read him the Miranda warnings and obtained his waiver of rights. The defendant is not entitled to relief on this issue.

## II. INVOLUNTARY CONFESSION

The defendant contends that his confession was involuntary because it was a product of promises of leniency. He claims the police promised him (1) that he would not be charged with a crime, (2) that he would be allowed a visit with his girlfriend, and (3) that he would be transferred from Hamilton County Jail to Silverdale. The state contends that the record does not preponderate against the trial court's finding that the defendant's confession was voluntary and that the police did not make any offers of leniency to the defendant.

"The test of voluntariness for confessions under article I, § 9 of the Tennessee Constitution is broader and more protective of individual rights than the test of voluntariness under the Fifth Amendment." State v. Smith, 933 S.W.2d 450, 455 (Tenn. 1996) (citing State v. Stephenson, 878 S.W.2d 530, 544 (Tenn.1994)). For a confession to be considered voluntary, it must not be the product of "'any sort of threats or violence, . . . any direct or implied promises, however slight, nor by the exertion of any improper influence.'" State v. Smith, 42 S.W.3d 101, 109 (Tenn. Crim. App. 2000) (quoting Bram v. United States, 168 U.S. 532, 542-43, 18 S. Ct. 183, 187 (1897)). The essential question therefore is "'whether the behavior of the [s]tate's law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined . . . .'" State v. Kelly, 603 S.W.2d 726, 728 (1980) (quoting Rogers v. Richmond, 365 U.S. 534, 544, 81 S. Ct. 735, 741 (1961)). The Supreme Court has held that in order for a confession to be involuntary, it must be the product of coercive state action. See, e.g., Colorado v. Connelly, 479 U.S. 157, 163-64, 107 S. Ct. 515, 520 (1986).

In State v. Johnson, a police officer told a suspect "that [the police department] had a working arrangement with people. That we'd help them if they'd help us, and you know, that we would try to help [the suspect] when [the case] got to court if he would help us." 765 S.W.2d 780, 782 (Tenn. Crim. App. 1988). This court found the defendant's confession in Johnson voluntary, stating that "the rather vague statement made by the officer was not such as would render defendant's confession involuntary." Id.

The record reflects that the trial court based its findings on the testimony of Det. Mathis and the defendant's statement and indicated it found the defendant's testimony incredible, at least to the extent it differed from Det. Mathis' testimony. Detective Mathis testified that he only promised the defendant to help him with the district attorney's office by telling them that the defendant had cooperated. We conclude Det. Mathis' promise was not improper. See id.

-6-

Regarding the defendant's transfer from Hamilton County Jail to Silverdale, we conclude the record contains sufficient evidence that the defendant was promised a transfer in return for his statement. We note that the defendant testified that he was promised to be transferred, that Det. Mathis testified that he may have made such a promise, and that the defendant was transferred two days after his statement. However, we conclude that such a promise did not operate to overbear the defendant's will in order to bring about a confession "not freely self-determined." We similarly conclude that a promise to allow the defendant to see his girlfriend would not have rendered the defendant's confession involuntary.

At the motion for new trial hearing, the victim's father testified that someone from the state told him during the trial that the state was going to offer the defendant a sentence of life imprisonment. However, the defendant has failed to demonstrate that this offer was made by Det. Mathis or Lt. Angel as a promise designed to extract his confession. We conclude that the defendant's statement was voluntary and that he is not entitled to relief on this issue.

Based upon the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, JUDGE