# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### MAY SESSION, 1999



**FILED**

September 7, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | C.C.A. NO. 02C01-9806-CR-00165 |
| | ) | |
| Appellee, | ) | SHELBY COUNTY |
| | ) | |
| **V.** | ) | HON. CAROLYN WADE BLACKETT, |
| | ) | JUDGE |
| **REDONNA T. HANNA and** | ) | |
| **BERNARDO C. LANE,** | ) | (FIRST DEGREE MURDER; ESPECIALLY |
| | ) | AGGRAVATED ROBBERY; AGGRAVATED |
| Appellants. | ) | ROBBERY; AGGRAVATED BURGLARY |

FOR THE APPELLANTS:                    FOR THE APPELLEE:

**A. C. WHARTON**
District Public Defender
Counsel for Defendant Hanna

**W. MARK WARD**
Assistant Public Defender
Counsel for Defendant Hanna
Criminal Justice Center, Suite 201
201 Poplar Avenue
Memphis, TN  38103

**PATRICIA A. ODELL**
Counsel for Defendant Lane
50 North Front Street, Suite 780
Memphis, TN  38103

**PAUL G. SUMMERS**
Attorney General & Reporter

**R. STEPHEN JOBE**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN  37243

**JOHN W. PIEROTTI**
District Attorney General

**PAUL F. GOODMAN**
Assistant District Attorney General

**MICHAEL H. LEAVITT**
Assistant District Attorney General
Criminal Justice Center, Suite 301
201 Poplar Avenue
Memphis, TN  38103

OPINION FILED _____

CONVICTIONS AFFIRMED; REMANDED TO TRIAL
COURT FOR ENTRY OF CORRECT JUDGMENTS

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendants, Redonna T. Hanna and Bernardo C. Lane, appeal as of right from their multiple convictions in the Shelby County Criminal Court. In this appeal, Defendant Hanna presents the following three issues for review:

    I.    Whether the evidence was sufficient to identify Defendant Hanna as the perpetrator of the crimes;

    II.    Whether the trial court erred in denying Defendant Hanna's motion to suppress his confession as involuntary; and

    III.    Whether the convictions for both first degree felony murder and premeditated first degree murder violated Defendant Hanna's double jeopardy rights.

Defendant Lane presents the following two issues for review:

    I.    Whether the evidence was sufficient to identify Defendant Lane as the perpetrator of the crimes; and

    II.    Whether the convictions for both first degree felony murder and premeditated first degree murder violated Defendant Lane's double jeopardy rights.

After a careful review of the record, we affirm all convictions of both Defendants. However, since there is not a judgment in the record reflecting the conviction and sentence of Defendant Lane for first degree murder (either premeditated or felony murder), this cause is remanded to the trial court to enter an appropriate judgment reflecting the conviction and sentence of life imprisonment of Defendant Lane for first degree murder, including the merger of two convictions into the one judgment for first degree murder. Defendant Hanna's case is remanded for the trial court to enter an appropriate judgment reflecting a conviction of first degree murder and sentence of life imprisonment and noting that the two convictions of first degree murder were merged into one judgment.

The Defendants were indicted on three counts of aggravated robbery, one count of especially aggravated robbery, one count of especially aggravated burglary, one count of first degree felony murder, and one count of first degree premeditated murder. A jury found both Defendants guilty as charged on all counts. However, with the agreement of the State, the trial court granted Defendants' motions for judgment of acquittal with respect to the especially aggravated burglary count and instead entered judgment finding them guilty of the lesser included offense of aggravated burglary. The trial court sentenced both Defendants to ten (10) years for each aggravated robbery conviction, twenty (20) years for especially aggravated robbery, three (3) years for aggravated burglary, and life imprisonment for first degree murder. At the sentencing hearing, the trial judge noted that although she would accept the jury's verdicts for both first degree felony murder and first degree premeditated murder, she would nonetheless merge the two convictions for sentencing purposes and enter only one sentence of life imprisonment for first degree murder for each Defendant. Both Defendants were sentenced as Range I Standard Offenders, and all sentences were ordered to be served concurrently. Andre Hamilton was also tried along with the Defendants Hanna and Lane, but his case is not a part of this appeal.

## Summary of the Facts

The facts in this case reveal that on December 27, 1993, there was a home invasion at 6858 Birch Run Lane in Memphis, Tennessee, during which four individuals were robbed. The four victims were Billy Mosley, his wife Artis Mosley, their daughter Danyale Davis, and their son Kenneth Mosley. During the robbery, Kenneth Mosley was shot once in the back and killed. Police developed the

following four suspects in the crimes: Defendant Hanna, Defendant Lane, Andre Hamilton, and Derrick Coleman.

Motion to Suppress

During the course of the investigation, police elicited statements from Defendant Hanna and Andre Hamilton. Both Defendant Hanna and Hamilton subsequently filed motions to suppress those statements. At the hearing, Sergeant Charles Richardson of the Shelby County Sheriff's Department testified. Sergeant Richardson had actually retired from the Sheriff's Department by the time of the hearing. He testified that on December 31, 1993, four days after the crimes, Andre Hamilton came to the police station accompanied by his mother to give a statement. Prior to Hamilton's interview, police had spoken with Derrick Coleman who had mentioned the names of both Hamilton and Defendant Hanna. Hamilton's statement also led police to believe that Defendant Hanna was involved in the crime.

Hanna voluntarily appeared at the police station the following day, January, 1, 1994, to give a statement. Sergeant Richardson informed Hanna that the officer had learned that he might have been involved in a robbery and homicide during which Kenneth Mosley was shot and killed. Richardson testified that he read Hanna his Miranda rights and that Hanna agreed to be questioned. According to Richardson, he made no threats or promises to Hanna and did not coerce him in any way. Hanna was an adult at the time of questioning.

On cross-examination at the suppression hearing, Sergeant Richardson testified that he may have told Defendant Hanna that Andre Hamilton and Derrick Coleman had already turned themselves in to the police. He also admitted that

Hanna stated that he had not come to talk with the police earlier because he was scared. However, according to Sergeant Richardson, Hanna did not appear scared during the interview, nor did he appear to be under the influence of drugs or alcohol.

Defendant Hanna testified in his own behalf at the suppression hearing. He stated that the police had come to his mother's home looking for him on December 31, 1993, but that he was not there. Sergeant Richardson left a business card, and Hanna called to arrange a meeting on the following day. Hanna further testified that both Andre Hamilton and Derrick Coleman had telephoned him to let him know that they had given statements. According to Hanna, he was handcuffed to a chair during the interview. He also said that Sergeant Richardson cut off the tape recorder during the interview to tell him what to say, but he could not identify where Sergeant Richardson had done so from looking at his statement at the hearing. Defendant Hanna testified that Sergeant Richardson told him if he would say that Defendant Lane had been the trigger man as Andre Hamilton and Derrick Coleman had said, then he (Hanna) would be allowed to go home. Hanna also said that he does not read very well and that he was scared during the interview. The trial court denied Defendant Hanna's motion to suppress.

Trial Testimony

The facts presented at trial revealed that in December 1993, Billy Mosley lived with his wife Artis Mosley, his son Kenneth Mosley, and his stepdaughter Danyale Davis at 6858 Birch Run Lane in Memphis, Tennessee. On the evening of December 27, 1993, he and Ms. Mosley had gone to bed and Kenneth Mosley had gone out bowling and/or to a wrestling match. Kenneth returned home between 10:00 and 10:30 p.m. Shortly thereafter, Billy Mosley heard a loud "bump" and then

he heard screaming in the house. Billy Mosley got out of bed, and as he opened his bedroom door, a man put a gun in his face and told him to get back in the bedroom. Kenneth Mosley also told his dad to return to his bedroom. During this time, Billy Mosley heard someone yelling to Kenneth Mosley, "Where's the money, where's the damn dope." Billy Mosley and his wife retreated to the bathroom off of their bedroom. They then heard a single gunshot and Mrs. Mosley ran out of the room. Billy Mosley heard someone yell at his wife to get down on the floor. Shortly thereafter, he heard someone say, "We've been in this house too long, let's get out of here." Billy Mosley emerged a short time later to find Kenneth Mosley lying on the floor face down, having been shot in the back. He also noticed that his front door had been broken down.

Billy Mosley discovered that his wallet and pager, which had been on the dresser in his bedroom, were missing. He testified that Kenneth Mosley looked as if he had been searched because his clothes were "open," and his pants pockets were turned inside out. Mosley was unable to find the jewelry which Kenneth Mosley normally wore. A gallon jug of coins that had been on the floor at the front door was also missing. Mr. Mosley testified that he had once overheard an argument between Kenneth Mosley and an individual called "Nardo." Although Billy Mosley was not very familiar with Nardo, he testified that Nardo had once come to the house and left a note for Kenneth. However, he could not remember the exact date of Nardo's visit. The note, which was admitted at trial, stated the following:

> Say ma[]n you need to call me soon as possible because I don't know what you pulling. [I] told you I was on my way and you said you was not going no w[h]ere. I'm not asking you no more. It's been a straight month and this is last time. Don't take this as a [threat]. You just need [to] stop playing. I'm not playing no more. [phone number]"

On cross-examination, Billy Mosley stated that he only caught a glimpse of the man who put a gun in his face. That man had nothing covering his face. Mosley also testified that he was not harmed during the incident. He said that the gunshot came after the intruders had been in the house approximately five minutes.

Artis Mosley, Kenneth's mother, testified to much of the same events as her husband. She said that she heard her daughter say, "Please don't hurt me," and that she then ran out of the bathroom and bedroom to the living room. A man then put a gun in her face and instructed her to lie down on the floor. One of the intruders had a towel covering his face. She observed her son lying on the floor. She saw another man with a gun ransacking an adjacent bedroom. The man with a towel over his face took Mrs. Mosley's rings from her fingers. Mrs. Mosley testified further that Nardo had called their house on several occasions. She said that the voice of the man with a towel over his face sounded like that of Nardo.

Danyale Davis, Kenneth's stepsister, testified that she had discovered she was pregnant earlier on the day of the home invasion. She stated that she was on the telephone in her bedroom when she heard the loud crash that night. She went to her bedroom door and as she reached it, the door was thrown open and she saw a man with a towel over his face holding a gun. The man took money from her purse and proceeded to move her about the house, instructing her to "find the dope money." Ms. Davis asked the man not to hurt her because she was pregnant, and the man replied, "well, find the dope money." They proceeded through the house looking for money, and as they did so, Ms. Davis saw Kenneth Mosley lying on the floor with a man standing over him holding a gun.

Following the shooting, Ms. Davis was shown two photo arrays by Sergeant Richardson. She identified Defendant Hanna in one of the arrays and Defendant Lane in the other one. She further identified both Defendants in court as the perpetrators. However, Ms. Davis was unable to say who actually shot Kenneth Mosley. Ms. Davis also identified Kenneth Mosley's address book at trial. That address book had a listing for Nardo and phone number next to his name. That number matched the telephone number on the note left with Billy Mosley for Kenneth Mosley.

Sergeant Richardson testified that he learned that the telephone number listed beside the name Nardo in Kenneth Mosley's address book and on the note left for Kenneth Mosley, belonged to a pager registered to Defendant Lane. While at Defendant Lane's home, the police called the number and observed a pager come vibrating out from under a chest of drawers. Defendant Lane admitted that the pager was his.

Sergeant Richardson also explained that he took statements from Defendant Hanna and Andre Hamilton. Hamilton indicated that it was Hanna and Lane who entered the Mosley home. He also indicated the purpose of going to the Mosley home was to get money. After waiting in the car for a time, Hamilton and Derrick Coleman approached the home. As they did so, they heard a gunshot. Hamilton then returned back to the vehicle. Defendant Hanna's statement indicated that Hanna was indeed inside the Mosley home. According to Defendant Hanna, he was in a back room when he heard a gunshot. Defendant Hanna admitted that they were all going to split the money, but stated that he did not find any money.

Sergeant Richardson also retrieved live .380 caliber Winchester ammunition from Defendant Hanna's residence. During the course of an interview with Derrick Coleman, Sergeant Richardson learned that a .380 handgun was missing from the Coleman household. Coleman's mother gave Sergeant Richardson ammunition from the spare clip to the gun. Sergeant Richardson sent this ammunition to the Tennessee Bureau of Investigation for testing against the bullet recovered from Kenneth Mosley's body and the spent shell recovered from the Mosley home. Defendant Hanna admitted to having possessed a .380 handgun on the night of the shooting. Sergeant Richardson also testified that a towel matching the description of the one worn by one of the intruders was recovered from the vehicle driven by Andre Hamilton on the night of the shooting.

Robert Royse, a forensic scientist with the TBI, testified concerning firearms identification testing. Royse testified that the bullet recovered from Kenneth Mosley was a .380 auto bullet, and that the spent shell casing recovered from the Mosley home was a .380 auto Winchester shell. Royse further testified that two live rounds of ammunition also went to him for testing and that they were .380 auto Winchester.

Dr. Jerry Francisco testified that Kenneth Mosley died from a single gunshot wound to the back which tore through his major organs and severed his aorta. Dr. Francisco stated that he found no drugs or alcohol in Kenneth Mosley's system. The distance of the gunshot was greater than two feet from Kenneth Mosley's body.

Defendant Hanna offered no proof at trial. Defendant Lane offered only the testimony of Paul Dalhauser, a genetic testing expert. Dalhauser testified that he attempted to perform DNA testing on the towel recovered from Andre Hamilton's

vehicle. However, the towel did not contain enough DNA for analysis, so the test was inconclusive.

## I. Identity

### (Defendants Hanna and Lane's Issue I)

In their first issue on appeal, both Defendants argue that the evidence was legally insufficient to support their convictions. Specifically, both Defendants contend that the proof of the identity of the perpetrators was insufficient. They argue that the State's proof did not establish that they were the individuals who intruded the Mosley home and committed the offenses therein.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Williams, 914 S.W.2d 940, 945 (Tenn. Crim. App. 1995) (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

Moreover, a criminal offense may be established exclusively by circumstantial evidence. Duchac v. State, 505 S.W.2d 237 (Tenn. 1973); State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); State v. Lequire, 634 S.W.2d 608 (Tenn. Crim. App. 1981). However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude beyond a reasonable doubt every other reasonable hypothesis save guilt of the defendant." State v. Crawford, 225 Tenn. 478, 470 S.W.2d 610 (1971); Jones, 901 S.W.2d at 396. In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Crawford, 470 S.W.2d at 613; State v. McAfee, 737 S.W.2d 304, 306 (Tenn. Crim. App. 1987).

In the case sub judice, the State offered sufficient evidence establishing Defendants as the perpetrators of the crimes. Artis Mosley testified that the voice of the man with a towel over his face sounded like that of the individual identified as Nardo (Defendant Lane). Kenneth Mosley's address book was admitted into evidence and it contained a telephone number next to the name Nardo. Upon

investigation, police learned that the phone number was registered to a pager belonging to Defendant Lane. Furthermore, Danyale Davis identified both Defendants from photo arrays shown to her by Sergeant Richardson two days after the crimes. At trial, Ms. Davis again identified both Defendants as the perpetrators in her home. Moreover, Defendant Hanna's own statement to police indicated that he was in fact present at the Mosley home during the crimes. It is well-established that the identification of a defendant as the perpetrator of the offense for which he is on trial is a question of fact for determination by the jury. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993), perm. to appeal denied (Tenn. 1994). Further, the identification testimony of a victim is, by itself, sufficient to support a conviction. Id. Danyale Davis' identification of both Defendants as the perpetrators is thus sufficient alone to support the convictions in the case. This issue is without merit.

## II. Motion to Suppress

### (Defendant Hanna's Issue II)

In his second issue on appeal, Defendant Hanna argues that the trial court erred in denying the motion to suppress his statement to police. Defendant Hanna contends that this statement was not voluntary and was coerced from him with the promise that he could go home if he identified Defendant Lane as the trigger man. Defendant Hanna also points out that his youth (he was 18 years old at the time of the statement) and his lack of formal education affected his decision to make a statement.

An appellate court should uphold a trial court's decision on a motion to suppress, unless the evidence in the record preponderates against the finding. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998). Questions of credibility of witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence, as well as all reasonable and legitimate inferences that may be drawn from the evidence. Id.

The United States Supreme Court has interpreted the Fifth Amendment in part to require that an incriminating statement or confession be freely and voluntarily given in order to be admissible. This even applies to statements obtained after the proper Miranda warnings have been issued. See State v. Kelly, 603 S.W.2d 726 (Tenn. 1980). Statements and confessions not made as a result of custodial interrogations must also be voluntary to be admissible. See Arizona v. Fulimante, 499 U.S. 279, 286-88, 111 S. Ct. 1246, 1252-53, 113 L. Ed. 2d 302 (1991). It must not be extracted by "any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." Bram v. United States, 168 U.S. 532, 542-43, 18 S. Ct. 183, 187, 42 L. Ed. 568 (1897) (citation omitted). Moreover, due process requires that confessions tendered in response to either physical or psychological coercion be suppressed. Rogers. v. Richmond, 365 U.S. 534, 540-41, 81 S. Ct. 735, 739, 5 L. Ed. 2d 760 (1961); Kelly, 603 S.W.2d at 728-29. This has evolved into the "totality of circumstances" test to determine whether a confession is voluntary. Fulimante, 499 U.S. at 285-87, 111 S. Ct. at 1251-52; State v. Crump, 834 S.W.2d 265, 271 (Tenn.), cert. denied, 506 U.S. 905, 113 S. Ct. 298, 121 L. Ed. 2d 221 (1992).

The voluntariness test under the Tennessee Constitution has been held to be more protective of individual rights than the test under the United States Constitution. See State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). For the relinquishment of rights to be effective, Defendant must have personal awareness of both the nature of the right and the consequences of abandoning his rights. See id. at 544-45. Additionally, his statements cannot be the result of intimidation, coercion or deception. Id. at 544. In determining whether the statements were voluntary, the reviewing court looks at the totality of the circumstances surrounding the relinquishment of the right. Id. at 545.

The trial court found that the statements were made voluntarily. We have studied the evidence, and considering the totality of the circumstances, we cannot conclude that the trial court erred by denying Defendant's motion to suppress on this issue. Again, the court's determination that the statements were given knowingly and voluntarily is binding upon the appellate courts unless the defendant establishes that the evidence in the record preponderates against the trial court's ruling. Henning, 975 S.W.2d at 299.

In the instant case, Sergeant Charles Richardson testified that Defendant Hanna voluntarily appeared at the police station for questioning. Hanna had previously learned that both Andre Hamilton and Derrick Coleman had given statements to police. Sergeant Richardson informed Defendant of the purpose of the questioning and Hanna signed a Miranda rights waiver form after being read his rights. According to Sergeant Richardson, Hanna did not appear scared during the interview and did not appear to be under the influence of drugs or alcohol.

Defendant Hanna testified at the hearing that he was handcuffed to a chair during the interview and that he was scared. He further said that Sergeant Richardson actually cut off the tape recorder during the interview in order to tell him exactly what to say. On cross-examination, however, Hanna was unable to pinpoint in his statement where Sergeant Richardson had actually cut off the tape recorder.

The trial court was faced with conflicting testimony which presented a credibility question for the trial judge. In its findings of fact, the trial court specifically found that Defendant Hanna knowingly, voluntarily, and intelligently waived his Miranda rights. The trial judge further stated that she was not persuaded by Hanna's testimony that he did not understand his rights. The trial court specifically found that she was not persuaded by Defendant's testimony that he was promised he could go home if he gave a statement. We have reviewed the record and find that the evidence does not preponderate against the trial court's ruling. See Henning, 975 S.W.2d at 299. We are unable to grant relief to Defendant on this issue.

### III. Double Jeopardy
(Defendant Hanna's Issue III and Defendant Lane's Issue II)

Both Defendants argue in this issue that the jury's finding of guilt as to both premeditated murder and felony murder violates double jeopardy principles. Defendants argue that the jury's finding of guilt on the second count of the indictment, charging first degree premeditated murder, after it had already found guilt as to the first count charging first degree felony murder, constituted double jeopardy.

Defendants contend that the trial court therefore improperly denied their motions to set aside the verdict of guilt as to first degree premeditated murder.

We find Defendants' contentions to be without merit as a panel of this Court has previously held that a dual finding of guilt as to both premeditated and felony murder does not violate double jeopardy protections. See State v. Addison, 973 S.W.2d 260 (Tenn. Crim. App. 1997), perm. to appeal denied (Tenn. 1998). In a case involving a single killing where the jury has found the defendant guilty under both theories of first degree premeditated murder and felony murder, the trial court should accept both verdicts but enter only one judgment of conviction, thereby merging the two verdicts. Id. at 267; Carter v. State, 958 S.W.2d 620, 624-25 (Tenn. 1997). The single judgment of conviction should note the merger of the two counts returned by the jury. See Addison, 973 S.W.2d at 267.

In the case sub judice, the trial court attempted to follow the correct procedure. At the sentencing hearing, the trial court noted that the Defendants had been convicted of both first degree premeditated murder and first degree felony murder. In sentencing Defendants, however, the trial judge specifically noted that she was merging the two counts as to each Defendant. Accordingly, each Defendant was sentenced to a single life term for the conviction of first degree murder.

The State has noted in its brief that there are two judgments reflecting a conviction of Defendant Hanna for first degree murder. One of these reflects a conviction for felony murder in the perpetration of robbery and the other for premeditated first degree murder. The State submits that one of the judgments mistakenly had Defendant's Hanna's name rather than Defendant Lane. However,

each judgment lists Defendant Hanna's date of birth and social security number. There is no judgment in the record on appeal reflecting a conviction of Defendant Lane for either felony murder or first degree premeditated murder in accordance with the verdict of the jury.

We are also unable to find in the record any order as to either Defendant reflecting that the convictions for first degree murder were merged. In situations such as this, the appropriate procedure is for the trial court to specifically note the merger of two convictions of first degree murder in one judgment for each Defendant reflecting a conviction of first degree murder. Addison, 973 S.W.2d at 267.

We affirm the convictions of Defendant Hanna and Defendant Lane for the offenses for which they were found guilty by the jury. However, we find it necessary to remand this case to the trial court to enter a judgment as to each Defendant reflecting a conviction for first degree murder and specifically noting that the two convictions for first degree murder were merged into one judgment for each Defendant. Furthermore, the trial court is to enter an order striking the previously entered judgments of first degree murder for Defendant Hanna.

_____
THOMAS T. WOODALL, Judge


CONCUR:


_____

-17-

JOHN H. PEAY, Judge

_____
JOE G. RILEY, Judge