IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 26, 2022 Session

## STATE OF TENNESSEE v. FELIPE GONZALEZ-MARTINEZ

**Appeal from the Circuit Court for Jefferson County**
**No. 12826    O. Duane Sloane, Judge**

_____

### No. E2021-00322-CCA-R3-CD

_____

The defendant, Felipe Gonzalez-Martinez, appeals his Jefferson County Circuit Court Jury convictions of rape of a child, arguing that the trial court erred by denying his motion to suppress his pretrial statement to the police, by admitting into evidence a video recording of the interview that produced his statement, by admitting into evidence handwritten notes exchanged by the defendant and the victim, and by imposing consecutive sentences. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Ed Miller, District Public Defender, and Cashauna Lattimore, Assistant District Public Defender, for the appellant, Felipe Gonzalez-Martinez.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Jimmy B. Dunn, District Attorney General; and Jeremy A. Ball, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Jefferson County Grand Jury charged the defendant with three counts of rape of a child for offenses against his 12-year-old niece between June 9, 2013, and June 8, 2014.

At the defendant's February 2020 trial, the victim's mother testified that she and her four children lived with the defendant, who was her ex-husband's brother. In 2015, the victim's mother discovered handwritten notes that indicated "[t]hat something was going on between" the defendant and the victim. She explained that "[t]he way [the victim]

was writing to [the defendant] and he was writing back to [the victim]" led her to believe that "they were having sex." The letters, which were exhibited to her testimony, contained statements that suggested a sexual relationship between the defendant and the victim. The victim's mother said that she immediately confronted the victim, who admitted the relationship, and the defendant, who denied the relationship.

The victim identified handwritten notes she had exchanged with the defendant. She said that they hid the handwritten notes "in the bathroom in-between the towels." The victim testified that she and the defendant were engaged in a sexual relationship at the time they exchanged the notes and that, although she could not recall the specific dates, she knew that she was 12 years old and in the sixth grade. She said that she and the defendant engaged in sexual intercourse three times in the defendant's bedroom at their home in Talbott. During cross-examination, the victim testified that the sexual relationship had ended some time before her mother discovered the notes.

Jefferson County Sheriff's Office Detective Pamela Taylor investigated the allegations against the defendant. After she interviewed the victim, Detective Taylor traveled to the defendant's house on February 23, 2015, and "asked him to come to the sheriff's department." The defendant agreed, and Detective Taylor drove him to the station because he did not have a driver's license. After agreeing to waive his constitutional rights, the defendant provided a statement to Detective Taylor. The interview was recorded, but Detective Taylor testified that the date and time stamp on the recording was not correct because "the old system that we had at the sheriff's department" "did not work well." Nevertheless, she testified that the recording accurately depicted the entirety of her interview of the defendant. The video recording was admitted into evidence and played for the jury.

During the interview, the defendant told Detective Taylor that he had been dating the victim's mother, who was his brother's ex-wife, for three years and that she and her children lived with him. The defendant acknowledged having written the notes to the victim and admitted that they exchanged notes by putting them in the towels in the bathroom. He conceded that the notes "got out of hand a little" but initially insisted that he was "not interested in her at all in that way." Eventually the defendant acknowledged that he and the victim had engaged in sexual intercourse "three times probably" during the time when the victim's mother was working nights and the victim was 12 years old. He said that he did not wear a condom and that he had worried about getting the victim pregnant.

The defendant also provided a written statement about the offenses, which was exhibited to Detective Taylor's testimony and read to the jury. In his written statement, the defendant denied having had sex with the victim and said that, instead, the victim came

into his room "and wanted to have sex but all I did was hug her and comfort her and tell her that everything was ok."

The State rested, and, following a *Momon* colloquy, the defendant elected not to testify and chose to present no proof.

Based upon this evidence, the jury convicted the defendant as charged of three counts of rape of a child. Following a sentencing hearing, the trial court imposed sentences of 25, 26, and 27 years and ordered them to be served consecutively to one another for a total effective sentence of 78 years' incarceration, to be served at 100 percent by operation of law.

The defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal. In this appeal, the defendant challenges the denial of his motion to suppress the statement he provided to Detective Taylor, the admission of the video recording of his interview with Detective Taylor, the admission of the handwritten notes exchanged by the defendant and the victim, and the imposition of consecutive sentences.

## I. Defendant's Statement

The defendant raises two issues with regard to the statement he gave to Detective Taylor. First, he argues that the trial court should have suppressed the statement because the defendant did not knowingly and voluntarily waive his constitutional rights before giving the statement. Second, he asserts that the trial court should not have admitted the video recording of the statement into evidence because it was not properly authenticated.

### A. Suppression

Prior to trial, the defendant moved the trial court to suppress the contents of the statement he gave to Detective Taylor, arguing that he "was placed under improper influence," that he did not knowingly and voluntarily waive his constitutional privilege against self-incrimination, and that "the totality of the circumstances indicate that his statement was not voluntary."

Neither party presented any live evidence at the June 20, 2017 hearing on the defendant's motion. Instead, the parties relied entirely on the contents of the video recording of Detective Taylor's interview of the defendant. The State argued that the defendant "was not even in custody" and that the totality of the circumstances established that, even if the defendant was "in custody on that date for purposes of custodial

interrogation," "we have a voluntary statement" because the defendant "was aware of what he was doing."

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, questions of credibility, the weight and value of the evidence, and the resolution of conflicting evidence are matters entrusted to the trial judge, and this court must uphold a trial court's findings of fact unless the evidence in the record preponderates against them. *Odom*, 928 S.W.2d at 23; *see also* Tenn. R. App. P. 13(d). The application of the law to the facts, however, is reviewed de novo on appeal. *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998).

The Fifth Amendment to the United States Constitution provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; *see also Malloy v. Hogan*, 378 U.S. 1, 6 (1964) (holding "the Fifth Amendment's exception from compulsory self-incrimination" applicable to the states through the Fourteenth Amendment). Similarly, Article I, section 9 of the Tennessee Constitution provides that "in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9.

In *Miranda v. Arizona*, the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* To safeguard the privilege against self-incrimination, "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.*

A statement made "during a custodial interrogation is inadmissible at trial unless" the State can establish a knowing and voluntary waiver of the rights. *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010). "[A] valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." *Miranda*, 384 U.S. at 475. "The State bears the burden of establishing 'waiver by a preponderance of the evidence.'" *State v. Climer*, 400 S.W.3d 537, 564 (Tenn. 2013) (quoting *Berghuis*, 560 U.S. at 384). Although the State need not "show that a waiver of *Miranda* rights was express," the giving of an uncoerced statement following the provision of *Miranda* warnings, "standing alone, is insufficient to

demonstrate 'a valid waiver.'" *Climer*, 400 S.W.3d at 564 (quoting *Miranda,* 384 U.S. at 475).

> The waiver inquiry "has two distinct dimensions": waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."

*Berghuis*, 560 U.S. at 382-83 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)); *see also Climer*, 400 S.W.3d at 564-65. The trial court "may conclude that a defendant voluntarily waived his rights if, under the totality of the circumstances, the court determines that the waiver was uncoerced and that the defendant understood the consequences of waiver." *Id.* (citing *Stephenson*, 878 S.W.2d at 545). "Among the circumstances courts have considered are the defendant's age, background, level of functioning, reading and writing skills, prior experience with the criminal justice system, demeanor, responsiveness to questioning, possible malingering, and the manner, detail, and language in which the *Miranda* rights are explained." *State v. Blackstock*, 19 S.W.3d 200, 208 (Tenn. 2000).

Even statements given following the proper provision and waiver of *Miranda* warnings must be voluntary to be admissible. *See Arizona v. Fulminante*, 499 U.S. 279, 286-88 (1991); *State v. Kelly*, 603 S.W.2d 726, 728 (Tenn. 1980). This means that, to pass federal constitutional muster and be admissible at trial, a confession must be freely and voluntarily given and not "extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence" or police overreaching. *Bram v. United States*, 168 U.S. 532, 542-43 (1897) (citation omitted). To determine voluntariness under the federal standard, the reviewing court must examine the totality of the circumstances surrounding the confession to determine "whether the behavior of the State's law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined—a question to be answered with complete disregard of whether or not [the defendant] in fact spoke the truth." *Rogers v. Richmond*, 365 U.S. 534, 544 (1961).

"The test of voluntariness for confessions under Article I, § 9 of the Tennessee Constitution is broader and more protective of individual rights than the test of voluntariness under the Fifth Amendment." *State v. Smith*, 933 S.W.2d 450, 455 (Tenn. 1996) (citing *State v. Stephenson*, 878 S.W.2d 530, 545 (Tenn. 1994), *abrogated on other grounds by State v. Saylor*, 117 S.W.3d 239 (Tenn. 2003)); *see also State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005). "The critical question is 'whether the behavior of the state's law enforcement officials was such as to overbear [the defendant's] will to resist and bring

about confessions not freely self-determined.'" *Smith*, 933 S.W.2d at 455-56 (quoting *Kelly*, 603 S.W.2d at 728 (internal citation and quotation marks omitted)).

The trial court declined to "mak[e] a decision about whether he was actually in custody or not" but concluded that the defendant's statement was admissible because the defendant "did exercise a knowing and voluntary waiver of his constitutional rights." Whether the defendant was in custody, however, is a threshold question because "[b]y its own terms, *Miranda* applies to the questioning of an individual who has been 'taken into custody or otherwise deprived of his freedom by the authorities in any significant way.'" *State v. Dailey*, 273 S.W.3d 94, 102 (Tenn. 2009) (quoting *Miranda*, 384 U.S. at 478). During the interview, which lasted less than two hours, the defendant agreed that he was "here on [his] own free will" and that Detective Taylor had driven the defendant to the sheriff's department for questioning only because the defendant did not possess a valid driver's license. The interview took place at a table, and the defendant was not restrained at any point. Detective Taylor clearly and explicitly told the defendant that he was not under arrest and was free to leave. She also told him that he could terminate the interview at any time. At the conclusion of the interview, the defendant was not arrested. Despite the trial court's unexplained reluctance to address the issue, the record clearly establishes that the defendant was not in custody when he gave the statement to Detective Taylor. In consequence, Detective Taylor was not required to provide him with *Miranda* warnings.

Detective Taylor did, however, provide the defendant with *Miranda* warnings, and the defendant nodded along as she did so. She then provided him with the written rights waiver form and encouraged the defendant to read along as "I'm reading it to you." When she asked the defendant if he understood the rights waiver form, the defendant replied, "Yea[h], I don't." The detective then went through each of his constitutional rights again and explained the contents of the form a second time. She then asked the defendant, "You understand though what you're doing?" The defendant nodded in agreement. Detective Taylor explained the nature of her investigation and reiterated that the defendant was free to leave before asking, "Now, do you understand that or do you have any questions? Cause I want you to be crystal clear . . . ." The defendant replied, "I understand it." Detective Taylor again encouraged the defendant to "please take the time, read each and every line" of the waiver form "and then initial. And if you have any questions during that time, ask me." After the defendant read the form, she asked again if he understood everything and whether he had any trouble reading the form, and the defendant responded, "No. No, I understand it. All of it."

The record establishes that the defendant voluntarily waived his constitutional rights and provided a voluntary statement to Detective Taylor. Detective Taylor, who was calm and courteous throughout the interview, took pains to ensure that the defendant understood his constitutional rights before asking him to sign the rights

waiver form. The defendant indicated more than once that he understood his rights and what he was forfeiting by waiving them. The defendant was offered food and drink during the interview. The interview lasted only two hours, and the defendant was allowed to leave at its conclusion. Absolutely no evidence suggested that the defendant's will was overborne. Under these circumstances, the trial court did not err by denying the motion to suppress.

## B. Video Recording

The defendant argues that the trial court should not have admitted the video recording of his interview with Detective Taylor because it was not properly authenticated due to the incorrect time and date stamp.

Tennessee Rule of Evidence 901 provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901(a). "Authentication can be properly established by the testimony of a witness with knowledge that the 'matter is what it is claimed to be.'" *State v. Mickens*, 123 S.W.3d 355, 376 (Tenn. Crim. App. 2003) (citing Tenn. R. Evid. 901(b)(1)). Both Rule 901 and the common law designate the trial court as the "arbiter of authentication issues," and, accordingly, that court's ruling will not be disturbed absent a showing that the court clearly abused its discretion. *See* Tenn. R. Evid. 901, Advisory Comm'n Comments; *Mickens*, 123 S.W.3d at 376. An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006), *overruled on other grounds by State v. Patterson*, 564 S.W.3d 423, 433 (Tenn. 2018); *see State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999).

The defendant argues that, given the erroneous time and date stamp, Detective Taylor could not properly say that the video recording was actually a video recording of her interview with the defendant. That is not what the rule requires. To be sure, Rule 901 provides that authentication may be made by the testimony of a witness with knowledge that "a matter is what it is claimed to be." Tenn. R. Evid. 901(b)(1). In this case, Detective Taylor identified herself and the defendant on the video and testified that the video recording being offered into evidence was the video recording of her interview of the defendant. The accuracy of the time stamp was irrelevant to the determination whether the recording was properly authenticated under Rule 901; it was enough that Detective Taylor testified that the recording was what it purported to be, the video recording of her interview of the defendant. The trial court did not err by admitting the video.

### *III. Handwritten Notes*

Prior to trial, the defendant moved the trial court pursuant to Tennessee Rule of Evidence 404(b) to exclude from evidence the "handwritten notes" purportedly exchanged by the defendant and the victim and located by the police inside the "victim's home" as unfairly prejudicial. No ruling on this motion appears in the record on appeal.

At trial, during her direct examination testimony, the victim's mother testified that she initially came to suspect that the defendant had been abusing the victim after she discovered handwritten notes hidden among the victim's clothes. She stated that, from the tenor of the notes, she surmised that the two were "having sex." When the State sought to introduce these notes into evidence, the defendant objected on grounds that the State had failed to lay a proper foundation for their admission and on grounds that anything purportedly written by the victim would constitute inadmissible hearsay. The trial court sustained the objection as to a lack of foundation. After the victim's mother testified that she recognized the victim's and defendant's handwriting on the notes, the trial court agreed that a proper foundation had been laid and admitted the notes into evidence, and the defendant offered no further objection to their admission.

On appeal, the defendant argues that the trial court erred by admitting the notes into evidence because they were irrelevant. It is well-settled, however, that "a party is bound by the ground asserted when making an objection" and "cannot assert a new or different theory to support the objection in the motion for a new trial or in the appellate court." *State v. Adkisson*, 899 S.W.2d 626, 634-35 (Tenn. Crim. App. 1994). "When, as here, a party abandons the ground asserted when the objection was made and asserts completely different grounds in the motion for a new trial and in this [c]ourt, the party waives the issue." *Id.* at 635. The defendant has waived our consideration of this issue.

### *IV. Sentencing*

The defendant contends that the trial court erred by imposing a total effective sentence of 78 years' incarceration. The State contends that the trial court did not err.

The trial court imposed sentences of 25 years in Count 1, 26 years in Count 2, and 27 years in Count 3, finding that the defendant committed the offenses "for the purpose of pleasure or excitement of the defendant," *see* T.C.A. § 40-35-114(7), and that the defendant abused a position of private trust, *see id.* § 40-35-114(14). The court determined that the sentences should be aligned consecutively given that the defendant engaged in "a continuous course of action" that was "predatory" and "calculated to take advantage of a minor child and her immaturity and affection" and that the victim would be

forced to deal with the ramifications of the abuse "for the rest of her life." The court observed that the defendant only stopped abusing the victim when her mother stopped working nights, thereby depriving him of time alone with the victim.

Our supreme court has adopted an abuse of discretion standard of review for sentencing and has prescribed "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

The standard of review adopted in *Bise* "applies similarly" to the imposition of consecutive sentences, "giving deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013). Although the trial court did not specifically identify which of Code section 40-35-115(b)'s grounds applied, the record is clear that the court relied on Code section 40-35-115(b)(5), which permits the imposition of consecutive sentences when

> The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

T.C.A. § 40-35-115(b)(5). The record establishes that the defendant used his position as the victim's uncle to commit the offenses.

In our view, the trial court did not abuse its discretion by imposing an aggregate sentence of 78 years. The defendant does not argue that the trial court misapplied

the enhancement or mitigating factors and does not contend that the trial court based the consecutive alignment of the sentences on an improper ground and instead asserts that the "record does not support a finding that" the sentence imposed "was justly deserved, was the least severe measure necessary, or otherwise complies with the overall purposes and principles" of sentencing.  Our standard of review does not permit us the luxury of simply reconsidering the sentencing decision of the trial court when the record indicates that it was imposed in compliance with statutory sentencing principles.

*V.  Conclusion*

Based on the foregoing analysis, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE